And I will call the next and last case this morning. New York Shipping v. Waterfront Commission Ms. Lambos Good morning. Good morning. May it please the Court, my name is Carol Lattias Lambos, representing the appellant, the New York Shipping Association, Inc., which I will refer to in my argument as NYSA. The issue for this Court this morning is to Time for rebuttal. Oh, yes, excuse me. Five minutes for rebuttal, please. The issue for this Court to determine this morning is whether or not NYSA has standing to challenge the appellee Waterfront Commission's whether the matter is right for adjudication on the merits. This is a matter of immediate consequence to NYSA's members. NYSA has brought this action on behalf of its stevedore company members operating in the port of New York and New Jersey. Why is it immediate? Has anybody been denied a license? Their license applications are pending and they're operating under temporary permits that will expire on December 1st. And they have permanent license applications pending before the Commission. These license applications have been pending for over a year. Wouldn't immediate be they've been denied and they're about to get one of these IPSEGs imposed on them? Well, the issue is once they're denied and an IPSEG is imposed, it's imposed by a stipulation. So you would lose your ability to challenge the IPSEG after you've consented to it, and that's the point here. You know, you guys make a lot of hay over the Waterfront Commission's authority and that it ought to be amended and all. I mean, you wouldn't say if they were trying to settle a case that, say for money or some other term, that they'd need actual legislative authority to settle a case, right? No, I wouldn't say that, and we certainly understand that lawsuits get settled all the time. But isn't that really what this is? Is this just a settlement position, really? It really isn't because what it is is truncating the licensing process and it's truncating the procedural rights of these stevedoring companies under the Waterfront Commission Act. Are you arguing that the standards for getting the permit are somehow changed by having this program in place and it's changing the? No, I'm not arguing that the standards are different. What I'm arguing is that it's truncating the process in that the Waterfront Commission Act itself already contains a process for the potential situation of a denial or a revocation of a license, and that's the payment of a monetary penalty. Or outright denial. Or outright denial, yes. What we're saying is that we believe that the commission will be more inclined to utilize an IPSC in its licensing determinations if it's available to them. As a matter of fact. You are arguing that they're changing their standards. They're more likely to deny if this other remedy is available. That's what you're alleging. I would say, yes, in that instance it's true. I also would say since the filing of these briefs, the commission has informed a NISA member that it would be required to retain an IPSC in order to operate in the port. It seems like, I mean, on the face of things, it seems like a good program because if one of the, for example, stevedore entities were found to be in violation of some ethical rule, well, they can, rather than shut it down, you would just get an inspector general there to run it until, it's like a period of probation. I mean, it seems like a good idea in light of the commission's mandate. Why is that? It seems like a good idea, but there's no statutory standards for when it should be imposed, how long the IPSC stays, under what circumstances. There are other licensing agencies like the New Jersey Gaming Commission or the New York City Tradeways Taller's Commission that have IPSC programs, but they have them pursuant to statutory mandates. This one's a little too fuzzy. This one is in the commission's discretion. But it's the last resort. In other words, the stevedores have a number of procedural hearings or abilities to correct any problems that are spotted before the inspector general issue comes in at the very, very tail end. And it's only, as I understand the record, it's only anticipated. It's not done yet. It's only anticipated when there's no other option. Well, that's not accurate because there is another option, which is the monetary penalty, and that's what the states of New York and New Jersey have put into the act. This is not in the act. It was not contemplated by the act. The issue is if you follow the procedure, the commission issues an adverse licensing determination. You go to an appeal to the administrative law judge. That decision goes against you, as the commission would argue. Then they can offer you an IPSC. But in effect, the association really hasn't suffered any harm at all. I mean, isn't any harm that you're pointing out speculative harm? Nothing has occurred. That's not true. What has occurred is the procedural injury to its members' particularized interest in the procedural protections of the Waterfront Commission Act and in the fair licensing processes of the commission. I want to know the specifics. What procedural rights do you have that were violated? The procedural rights are to the licensing process of the commission as authorized by the act, and the availability of the IPSC will become an impermissible factor. Even the district court recognized. I'm not following. I'm sorry. Okay. Procedural rights, do you mean a right to sit in a room and discuss this with somebody or a right to be heard or a right to object? No, right to the fair, full, complete licensing process of the commission, which also includes the remedy already in the statute for an adverse licensing determination or a licensing revocation, which is the monetary penalty. In this case, it's clear that if the commission has an IPSC available, they're likely to use the IPSC instead of imposing or mitigating the penalty like they can. Why is that clear?  Excuse me, Your Honor? You said it's clear. Yeah. Well, because the commission has already done it since the filing of these briefs. There was a NISA member company that has applied for a license, and the commission informed them that they would have to retain an IPSC pursuant to a stipulation in order to obtain a permit to operate. Is that part of our record? That's, as I said, it's subsequent to briefing, but it shows that it's not speculation and it's more than plausible that the commission would use the IPSC as a factor in a licensing determination. It seems to, you know, there's two things going on here. The question is whether you have a procedural rights claim, in which case you don't have to have some immediate injury, a hard and fast injury in the way we understand it, if it's a procedural rights claim. It still has to be right. My problem here was I didn't really know what the program was because there was one statement in August and then another in September, and, you know, as a prudential matter, if the court's going to decide if a program violates a statute or not, it really needs to know what it is. So there may be, even if you got past the hurdle of the procedural and have procedural rights violation, is this thing ripe enough for a court to decide anything? Well, courts have determined that procedural rights violations become ripe at the procedural violation, at the failure of the agency. Let's imagine a case where you know what the procedure is. My question is, here's a case where do we really know what the procedure is? We don't know whether you keep a right to appeal, whether you give up the right to appeal when you accept an IPSC. And we don't really, I mean, I don't think we really know, like there's no regulation. Okay, you have a new regulation. We know exactly what it says. We know what it does. You can challenge it. But here we have a kind of program that's not in place yet that we've seen. So can the court do something meaningful here? Yes, it can. As the Supreme Court noted in CBS versus U.S., that the announcement of the agency's intention is ripe for attack. And this is the point here. The commission announced it may require stevedoring companies to retain an IPSC subject to a stipulation. So the program is not in place yet? It's in place. It was in place when it was published on the commission's website. That's when the matter became ripe. It's an announcement of a prospective program. It's not one that is actually, what they're doing is soliciting applications for inspector generals. Isn't that what they're doing? Well, you know, you have to start the program somewhere, and the issue is they announced their intention that they may require companies to retain IPSC. So that intention is what you assert is a concrete harm? That's what CBS versus United States, the Supreme Court has said, that it is an announced policy of the agency. If it's a prospective program, you say that amounts to a concrete harm? Yes, because it's harming the particularized and concrete interests of the very small amount of companies subject to this statute. In the fair licensing process and the full procedures which are truncated by this program because the commission has testified that the program is the only alternative to the revocation or denial of a license. If the commission were to suddenly say this is not a very good idea at all, even from its inception, I think we'll just fold it up, would there be any harm? They can fold up the program. But would you have suffered any harm? If they discontinue the program, there is certainly a NISA member that would have suffered harm because they have been asked to retain an IPSC. But there wouldn't be. They just closed the program. They say they're not going to implement the program. Isn't it true that you would suffer no harm? If the program ended, if we adjudicated this matter on the merits and the program ended, NISA members would have the sanctity of their licensing process. I think you're over your time. Thank you. Thank you very much. Ms. Sorrell. Good morning. May it please the Court, Phoebe Sorrell, General Counsel with the Waterfront Commission of New York Harbor. Let me ask you this. It seems to me that the district court, in fact, it said that this was analogous to a citizen's rights suit, and this really isn't. This is a program that's aimed at the very people who are being regulated, okay? So it's not like a citizen's suit. So I don't think it can be analogized that way. It seems to me that there is a procedure that's been announced, and they have, as the people are being targeted, they have a right to challenge it. I just don't know whether they can challenge it today. Do you dispute that this is aimed at them and it's a new procedure and it's at least gotten over that jurisdictional hurdle? We don't dispute that this program is aimed specifically at the stevedoring companies that operate in the Port of New York and New Jersey. And they fund you. That's exactly right. We get the 2 percent assessments from the stevedoring companies. And we don't dispute that this is a new program that we are implementing. And the reason that we are doing that is because the commission was called to task two years ago by the New York State Inspector General who said, Waterfront Commission, for the last 57 years you have not been fulfilling your statutory mandate. You were required, pursuant to the Waterfront Commission Act, to permanently license these stevedoring companies. I don't really have a problem. My problem is, is there really no constitutional standing here? I'm not getting the prudential issue. But that these people cannot complain about this program. Absolutely, Your Honor. Because at this point, this program is being offered as an additional remedy should they elect to use it. Are you saying there's no chance that it's going to change how the commission gives out licenses? That, okay, if we have to shut these people down or give them a license or a fine, it's one thing. But if we can give them an inspector general instead, maybe we'll put them in the denied license category because we know it's not really a denied license. Absolutely not, Your Honor. At this point, every single procedural safeguard is still in place. And the way that it works. They can appeal the denial, keep going on a temporary permit, and then take the IPSC at the end? Yes, Your Honor. The way it works is that we at this point have to look at, we are entrenched in a complex due diligence process where we are looking at the applications of the stevedoring companies. And if at some point we determine, according to the Waterfront Commission Act, that they do not have the requisite good character and integrity, well then a notice of hearing is issued. And they go through a full-blown administrative trial before an administrative law judge at which they are able to plead their case just the way that they always have been for the last 57 years. Are there cases where a party may never get either an IPSC or even a fine? They would just say you're out and that's it? Well, that is when it comes to the very end of that process. And if at that point, if a notice of hearing is issued, an administrative hearing is held, there is a negative finding. That negative finding is recommended to the commissioners. The two commissioners take that negative finding. They recommend that no application, that that application is denied. Then the stevedoring company goes, and it goes to whatever judicial or administrative process that it seeks to explore at that point. And they keep going through the judicial appellate process. At that very, very end, it is our testimony before the New Jersey State Senate was at any time during that process, a stevedoring company can say, okay, I'll take on an IPSC. Now, so you appeared before the New Jersey State Senate concerning this inspector general program? Yes, we did, Your Honor. Were the stevedoring companies advised of the hearing and had an opportunity to be present? Yes, they did, Your Honor. Did they appear before that party? Yes, they did. And Joe Curdo, the president of the New York Shipping Association, did testify before that. I assume their testimony was in objection to the program? Yes, Your Honor, that's correct. At that point, Your Honor, we clarified this is not an imposition. One thing that is very important that was brought up today. When you say it's not an imposition, does that mean that it's discretionary or that it's optional? It is optional. That is exactly right, Your Honor. Let me ask you this. Doesn't that go to the merits? What we want to know is is this complaint subject to dismissal for lack of jurisdiction? That's what the district court did. And can the district court consider your statements at the Senate of how this program operates as opposed to just your notice in August in deciding whether to dismiss this complaint? Isn't that a matter outside the complaint that the court should not consider in deciding the jurisdictional dismissal issue? Yes, there are two issues. The first issue is whether or not the New York Shipping Association has standing at this point. And that was the main. I think the district court really focused on that issue, whether there was a particularized harm, whether it was conjectural, whether there was immediate injury. And the district court looked at the record and looked at the one-page announcement by the commission on its website and the request for expressions of interest, which, by the way, the commission still has not even assembled a panel of IPSEGs. One thing that was brought up during Ms. You did not say that the stevedores could never challenge this program. They can certainly challenge the program if and when. They would have standing. Yes, exactly. Your point is they don't have standing now. But there's somewhere along the line where you must concede they would have standing. Yes, Your Honor. And where would that be? If and when. One of the New York Shipping Association's members were told either at some point, any time during the process, look, you have been found not to have the requisite good character and integrity, and we are going to deny you your application unless you retain an IPSEG. If that is done in the very beginning prior to the typical administrative process or the statutory framework that's in place, they would be able to challenge it. But even at the very end of the process, if they were told you either have a denial of the application or you retain an IPSEG, that's when it becomes right. That's when, look, we are not going to concede that they have a meritorious claim, but that's when the claim becomes right. I thought the whole purpose of the procedural rights avenue to jurisdiction was when an agency announces a program, a certain procedure, that the person doesn't have to suffer through the procedure if they think it's illegal and they can challenge the program. They have standing to challenge it at the beginning. I thought that was the whole reason for the procedural rights doctrine. But that is if there is a procedure in place. That is if a procedure has actually been imposed upon an entity or upon a party. I'm saying the agency issues a regulation. Today is the regulation. It hasn't been applied to anybody yet. But there it is. You get to challenge it on that day, don't you? Yes. I mean, if you're the person it's aimed at. Right. That's in the instance that an agency issues a regulation and it was not done under the proper statutory framework. And a good example that was not done under the proper statutory framework is the merits. It's the fact that they issued the regulation which affects you. In fact, that's when the statute of limitations starts to run, doesn't it, for that procedural rights challenge from the day they issue the regulation. Your Honor, that would be applicable here if, like the Waste Commission, we implemented as part of our regulations, as in the Waste Commission, and a regulation that the commission may impose. And in the Waste Commission, it is without a hearing. The commission may impose an IPCG in the event that it will deny a license to a registered entity. To a very narrow view, what is a procedural right? That is something that affects the hearing, who may be there, blah, blah. I thought it was pretty broader than that. Well, I think it also depends on the framework. If something is optional, if we are saying, look, you can either be shut down, you can go through this long process, or as part of, Judge Chigaris, as you mentioned, as part of the settlement, this is something that we are giving you, we are offering it to you because we certainly don't want to be in a position after 57 years to have to shut down if we get to that point. Does the act that creates the commission speak to the issue of procedural rights? It speaks to the fact that we are ever-regulating the companies, that they are required to have good character and integrity. Now, as far as the procedural rights, they are entitled to a hearing, and it discusses how it is recommendations are made to the commissioners. Well, of course, we're speaking about a new program. Yes, Your Honor. Are you not required to seek the advice and consent of the association? We are required to seek their, we are required to work with the association. In fact, in this matter, and this was not within, it's not in the record below because it was not within the complaint, we did sit down with the New York Shipping Association, with the president of the association to say, we'd like to talk to you about IPSEGS, and we're told we're not interested. And so we would have to confer with them if there was an imposition. But in this instance, where we've just announced a program to say, if it gets to that point, you can take on an IPSEG if you should so choose. The only time that they would ever be required is at the very end of the line. In that instance, we would not have to, under the Waterfront Commission Act, meet and confer. I put that stuff you said basically at the Senate hearing. Yes, Your Honor. Okay. That is a description of the program that's outside the complaint. That it's something else besides, I just don't know that anybody could consider that on a jurisdictional issue. And that's all fine for, you know, whether this is meritorious or not. I just don't know how it goes to jurisdiction. Well, and that's, again, that's the thing. There are two issues. And the first one is, does the New York Shipping Association have standing at this point? Have they been harmed? Is it right? The answer is no. I mean, we would like to, we would be more than happy to argue as to the merits of the actual IPSEG program. But isn't that what you're arguing every time you mention your testimony in the Senate? Well, we argue that up until this point, whether in the record below or up until this point, there has not been the imposition of an IPSEG on a NISA member. One thing that is very important to point out, Ms. Lambos mentioned that there was a NISA member who was required to take on an IPSEG. In the application process, that is absolutely not true. That was, again, first it's outside the scope of this matter. It is outside the complaint. But that member is currently, holds a temporary permit. It was asking the commission to have an emergency permit issued right away. An IPSEG was discussed with that NISA member, and the NISA member did not opt for the IPSEG and instead opted, chose other options and is currently permitted and is operating in the Port of New York, New Jersey. And so that's a perfect example where the IPSEG was discussed and IPSEG was brought up and it was not imposed as the shipping association is contending on its members. Does the issuance of a notice calling for applications for Inspector General demonstrate that this program is on the verge of being implemented? It demonstrates that the commission is very proactive, Your Honor. We have not made any determinations at this point that a NISA member or any other stevedoring company lacks the requisite good character and integrity. You just said that you discussed this IPSEG program with this person who was seeking a license. A permit, Your Honor. I'm sorry. There's a difference because the license. They were seeking an emergency permit. Exactly. But it sounds to me that there's more of a program here than you're willing to admit. No, Your Honor. As far as the program goes, there has been no panel, no IPSEG panel that has been assembled. There have been no IPSEGs that have been imposed. At this point, it's the announcement of the program, the request for expressions of statement of interest. And, again, that one instance, which is outside the scope of this matter, which is outside the complaint, was a unique situation, which at the end of the day that entity opted not to retain an IPSEG or a monitor in order to operate and does operate in the port today. So at this point, there's the issue of the standing issue and there's whether or not the commission is empowered under the Waterfront Commission Act to offer these IPSEGs. One thing that is very important, the NISA will, it likes to speculate as to why no permanent applications have been granted, no permanent licenses have been granted. And there's that desire. Well, why haven't they been granted? Well, two years ago, the report came out saying, Waterfront Commission, it's go time, you need to start doing this. So we then sat together, in fact, with Ms. Lambos and her firm to consult with them to completely revamp the licensing process where the applications that had been given before were bare bones at best. And so we actually worked with NISA's counsel to come up with an application. That was just finally submitted about a year ago. And the applications just finally started coming in in December of 2010. And this has been a long, extensive process. We are conducting comprehensive and an extensive due diligence process because for the first time in 57 years, we are finally at that point. Were you going to issue licenses in December? We have already issued 10 permanent licenses, Your Honor. This December date is... Any IPSEGs in there?  No IPSEGs. No IPSEGs. This December date is sort of unilaterally mentioned by the Shipping Association. They're operating under temporary permits now until permanent licenses are issued. But there's no requirement that... There's no date certain by which a license must be issued. Ms. Sorrell, thank you very much. Thank you, Judge. We're done. Ms. Lambos, you have a few minutes, five minutes. Thank you. I'd just like to clarify some factual misrepresentations made during counsel's argument. It is not true that counsel for NISA sat down with the Waterfront Commission to design their new license. I met with the commission representing a different client to complain about the new license that was designed by the commission.  Then, just to clarify with regards to the due process rights of temporary permit holders. Temporary permit holders can have their license revoked prior to an administrative hearing, unlike a permanent license holder. A permanent license holder can only have their license revoked after administrative hearing. So there's a big, significant difference in that regard. And all of NISA's members are currently operating under temporary permits. Now, with regard to your question about the harm, about if the commission just dropped their IPSC program right now, there would be significant harm to NISA and its members. Because what it would do is it would just be another way to say that the agency can do whatever it wants.  It can cancel a program. There has to be legislative standards, and there are legislative standards for the conduct of the commission. With regard to counsel's assertion that the commission has not empaneled a panel of IPSCs, that's simply not true. In its letter to the NISA member with regard to the commission's requirement that they retain an IPSC, while it is true that the company did not retain it, there was a panel noted in the letter. There were three IPSC companies ready there. Pick one. So if the company capitulated, there would have been a panel empowered for the company to choose from. And it's significant to know in that situation, while it is not in the record, that the alternative that the company chose to the IPSC was that it had to forego hiring an individual who was expected to be employed by the new licensee. And that was the condition that the commission put on the company. So the company had its proverbial Hobson's choice, IPSC or the services of this employee that was previously employed with the full knowledge of the commission by the successor company. So it's very heavy-handed tactics and no guarantee of either the company's procedural rights under the commission or the individual's rights to be free from the IPSC program. I would say this individual can come into the court and complain of the IPSC program now. You might be right. We haven't discussed among us a case yet. But let's just hypothetically speaking, say we disagree with you. You're still down the road to have an opportunity to raise all of your procedural concerns before a court, would you not? At the moment that an inspector general is in fact offered to you as an option. With all respect, Your Honor, no. Because once the IPSC is offered, it's the proverbial Hobson's choice. You lose your license or you take the IPSC. So you take it and you consent. You lose your ability to challenge it. I'm not sure that's correct. You can keep your license in place pending a resolution of the issue before a court. Why couldn't that be the scenario? That's not the procedure that was discussed. The procedure that was discussed is that you have an adverse licensing decision. You appeal it to the ALJ. If the ALJ goes adverse to you, it's reviewed by the commission. If it's then adverse, you go to a court in either the State of New York or the State of New Jersey. If then you have an adverse decision and your choice, you know, all through that process, the IPSC is not the issue. The issue becomes the IPSC is offered after your last final state court appeal. It's up there. I think counsel said it could be offered at any time. It could be offered at any time. And if you accept it, your right to appeal is gone. So if not now, never. When you're a company faced with the issue of IPSC or closing, putting hundreds of people out of work, what do you do? Yes, or you can do it as a settlement, as I said in the very beginning. Yes, but then you can't challenge the merits of the program or the ability of the commission to offer it. There is distinct harm, and the distinct harm is in the improper inculcation of the entire licensing process. The commission can certainly give you a license and impose a monetary penalty. That's what's authorized by the statute. This is not. This is just empowering the commission, as Judge Rustani mentioned before, to do what it pleases. I'd rather be a justice. I promoted you today. My time is up. Thank you. Ms. Lambos, thank you very much. The arguments were very helpful, and we will take the case under advisement. Patrick. Thank you.